UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARIUS LAMAR LEWIS,

    Petitioner,

              Case No. 16-10701
v.              Honorable Linda V. Parker

CONNIE HORTON,[1]

    Respondent.
_____/

## **OPINION AND ORDER (1) DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, (2) DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND (3) DENYING LEAVE TO APPEAL IN FORMA PAUPERIS**

Petitioner Darius Lamar Lewis ("Petitioner") has filed a pro se petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his state court convictions for one count of armed robbery and one count of safe breaking in violation of Michigan Compiled Laws §§ 750.529 and § 750.531, respectively. The jury found Petitioner not guilty of two counts of possession of a firearm while

---

[1] Petitioner was incarcerated at the Kinross Correctional Facility when he filed his habeas petition, but was soon after moved to the Alger Maximum Correctional Facility. Thus, on February 29, 2016, the Court amended the caption to reflect the warden of the facility where Petitioner was incarcerated. *See* Rule 2 of the Rules Governing § 2254 Cases. Petitioner has since been moved to the Chippewa Correctional Facility. The Court again amends the case caption to name the warden of that facility as Respondent.

committing a felony (felony-firearm) in violation of Michigan Compiled Laws § 750.227b(1). The state trial court sentenced Petitioner as a habitual offender, fourth offense, to concurrent prison terms of 300 to 420 months for the armed robbery conviction and 140 to 240 months for the safe breaking conviction, with 316 days credit for time served. For the reasons stated below, the Court is denying with prejudice Petitioner's request for habeas relief.

## I. Background

Petitioner was convicted following a jury trial in the Circuit Court for Saginaw County, Michigan. The Michigan Court of Appeals set forth the following relevant facts in its decision affirming Petitioner's convictions:

> On September 29, 2011, two men robbed Advance America, a cash advance store located in Saginaw County. Employee Joann Gidron and her coworker, Gerald Scales, were in the store that day. According to the store's security camera record, two men entered the store at 11:50 a.m. Gidron described the men as African-American and stated that "one of them was about six feet tall and the other was about five-eight." Gidron testified that "the shorter man" approached her and inquired about getting a cash advance loan. She told him what pieces of information he would need to provide, and that if he came back to the store with that information, she could process the loan for him. The two men then left the store.
>
> Some time around 12:30 p.m., Gerald Scales left the store for lunch; Gidron remained. At 12:50 p.m., the two men returned to the store. The shorter man again approached Gidron and told her not to move and to give him the money. The taller man approached Gidron holding what appeared to be a semi-automatic handgun. Gidron testified that during the robbery the taller man held the gun to her back while the

2

shorter man took the money out of the cash drawers. The shorter man then asked Gidron where the safe was, and she told him. The men took the money from the safe, tied Gidron's hands with zip ties, and then left the store.

When the police arrived Gidron described the robbers and police took photographs and dusted for prints. A set of prints recovered at the scene matched those of Andre Jackson, who was subsequently tried and convicted as one of the robbers. About a month after the robbery, Detective Russell Kolb asked Gidron to give a physical description of the shorter man to a police sketch artist.

Based on the fingerprints at the crime scene, Detective Kolb obtained a warrant for Jackson's arrest. Detective Kolb discovered Jackson's address, and he and Sheriff's Deputy James Houge observed the house from a distance to evaluate flight and safety risks. On October 26, 2011, Detective Kolb observed two men drive up, get out of the car, and go into the house. Kolb stated that one of the men appeared to be Andre Jackson. The men then came back out of the house with two other people, got back into the car, and drove away.

At Kolb's direction, Houge pulled the car over. The passengers in the back seat were Alana Jackson, Andre's sister, and Jerry Prince (or Print), while the front seat passenger was Andre Jackson, and the driver was defendant. Kolb testified that defendant looked like the man depicted in the drawing the sketch artist drew from Gidron's description. Andre Jackson was arrested and the other three were taken to the police station for questioning. Andre Jackson gave Kolb consent to search his house and his sister told police where he kept his gun. Gidron identified it as the weapon used in the robbery. The gun turned out to be a semi-automatic BB gun.

Detective Kolb subsequently showed Gidron a second photo line-up that included a photo of defendant. Gidron identified defendant as the shorter man who participated in the robbery.

*People v. Lewis*, No. 314110, 2014 WL 1616409, at *1-2 (Mich. Ct. App. Apr. 22, 2014) (internal footnote omitted). These facts are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009).

Petitioner's convictions were affirmed on appeal. *Lewis*, 2014 WL 1616409, *leave denied*, 855 N.W.2d 746 (Mich. 2014). Petitioner then filed a post-conviction motion for relief from judgment in the state trial court, which the court denied. *People v. Lewis*, No. 12-037025-FC-5 (Saginaw Cir. Ct., Aug. 31, 2015). The Michigan Court of Appeals denied Petitioner's delayed application for leave to appeal. *People v. Lewis*, No. 332095 (Mich. Ct. App. July 25, 2016). Petitioner did not appeal this decision to the Michigan Supreme Court.

Petitioner initiated the instant action by filing an application for the writ of habeas corpus on February 23, 2016. He asserts the following grounds in support of his request for relief:

> I.   Defendant was denied a fair trial when a police officer testified that a composite sketch appeared to be the defendant invading the province of the jury, and offering "expert" testimony without being qualified as an expert.
>
> II.  The trial court erred in refusing to permit the late endorsement of a witness defendant offered to establish the foundation of a business record.
>
> III. The trial court erred in refusing to instruct the jury on the necessarily included lesser offenses of unarmed robbery and larceny from person.

4

> IV. Defendant is entitled to a resentencing because guidelines error altered the sentencing range. Scoring error occurred under ("OV") 4 and 14.

Respondent filed an Answer to the petition on September 21, 2016.

## II. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court]

5

to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

"[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). To obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. A habeas petitioner should be denied relief as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *See Woods v. Etherton*, 136 S. Ct. 1149, 1152 (2016).

### III. Discussion

#### A. Petitioner's "expert" witness testimony claim

Petitioner alleges that he was denied a fair trial when Detective Russell Kolb testified as an "expert" witness that the individual depicted in the composite sketch appeared to be Petitioner.

6

As an initial matter, it is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id.* Errors in the application of state law, especially rulings regarding the admissibility of evidence, are not usually questioned by a federal habeas court. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000). As such, Petitioner would not be entitled to habeas relief on his claim that Detective Kolb's testimony was impermissible lay opinion testimony, had it been impermissible. *See Charles v. Thaler*, 629 F.3d 494, 500 (5th Cir. 2011). In any event, Detective Kolb's testimony was not impermissible testimony and was not offered as "expert" testimony.

Petitioner's claim concerns the following testimony at trial, when Detective Kolb was questioned about the stop of the car Petitioner was driving to execute the arrest warrant for Andre Jackson:

> Q Now, at the time the traffic stop is made, you have a warrant in hand for Andre Jackson?
>
> A Yes.
>
> Q And is he arrested?
>
> A Yes.

7

Q. The other three people in the car, are they let go or are they taken?

A We took them all to Saginaw Township because our interview room was down, being remodeled.

Q At the time of the traffic stop, when Andre Jackson is arrested, were you able to get a good view of Darius Lewis?

A Yes.

Q Now, did you know his name at the time or did you learn it?

A I learned it.

Q All right. And the man that was driving the car, do you see him in court today?

A Yes.

Q And where is he sitting?

A Sitting next to Mr. Piazza.

MR. BEST: And, Judge, if the record might reflect the witness has identified defendant.

THE COURT: It shall reflect.

BY MR. BEST:

Q As part of that investigation, did you learn his name was Darius Lewis?

A Yes.

Q Now, at the time of the traffic stop, you already had the sketch?

A  Yes.

Q.  Did you notice anything about the sketch in comparison to any of the four people in the car that were stopped?

MR. PIAZZA:  Objection, Your Honor, calls for speculation, conclusion and opinion on the part of this witness.

THE COURT:  I believe he's entitled to give his opinion as to whether or not he observed anyone in the car and if it seemed similar to the photograph, Mr. Piazza, so I'll overrule that objection.

BY MR. BEST:
    Q.  Do you have an opinion if this drawing looked like anyone in the car?

A.  I felt that it looked like the driver at the time.

Q.  The driver being?

A.  Darius Lewis. Got too many names running through my head. I'm sorry.

(11/6/12 Trial Tr. at 124-126, ECF No. 10-9 at Pg ID 231.)

The Michigan Court of Appeals rejected Petitioner's challenge to Detective Kolb's testimony, reasoning:

> … Kolb's testimony had no bearing on whether Gidron gave a truthful and accurate description of the offender to police. Nor did it amount to opining on the ultimate issue of defendant's guilt or innocence. Rather, the prosecutor's question whether Kolb thought the sketch looked like any of the men in the car was in the context of the ongoing investigation. Kolb did not give an opinion regarding defendant's identity as one of the offenders; he only gave his personal observation that the driver of the car looked like the sketch the artist had drawn

9

> from Gidron's description. This gives context for why defendant was detained—nothing more.

*Lewis*, 2014 WL 1616409, at * 2. This decision was neither contrary to, nor an unreasonable application of, clearly established federal law as determined by the Supreme Court. Nor was it based on an unreasonable factual determination.

Detective Kolb did not offer an opinion as to Petitioner's guilt. In any event, Petitioner has not identified any Supreme Court case holding that the opinion testimony of a witness concerning the guilt or innocence of a criminal defendant violates the Due Process Clause. Instead, in his brief on direct appeal, Petitioner cited to state court decisions, which cannot serve as the basis for habeas relief, and the Sixth Circuit Court of Appeals' decision in *Cooper v. Sowders*, 837 F.2d 284 (1988). *Cooper* is easily distinguishable and its continuing vitality is questionable, however.

In *Cooper*, the Sixth Circuit held that it was fundamentally unfair and a violation of due process to permit a detective to testify as an expert witness that all the evidence linked the petitioner, and no one else, to the crime. 837 F.2d at 287-88. In that case, a police officer testified that "[t]he only evidence we found that would link anyone to this crime would be [the defendant]." *Id.* at 287. The court noted that "the police officer was [impermissibly] permitted to testify to his own, personal opinion that such evidence as there was against other suspects was insufficient to justify their arrest. … This opinion suggests to the jury the guilt of

the accused and the innocence of other suspects." *Id*. (quotation marks and citation omitted). Consequently, the Sixth Circuit found that "[t]he opinion-testimony had a direct influence on the jury's consideration of [the] petitioner's guilt or innocence." *Id.* at 287.

In comparison, Detective Kolb, as the state court reasonably found, did not testify regarding whether the evidence sufficed to establish Petitioner's guilt and did not opine on Petitioner's guilt. *Cooper*, moreover, was decided before AEDPA's enactment and relies upon state court authorities, not federal law as clearly established by the United States Supreme Court. AEDPA, which applies to Petitioner's case, demands a different standard of review. In short, the Sixth Circuit's holding in *Cooper* does not entitle Petitioner to habeas relief.

Petitioner is not entitled to habeas relief on his first claim.

### B. Petitioner's late endorsement of a witness claim

Petitioner next asserts that the trial court erred by precluding him from calling a witness in support of his defense.

Eight days before trial, Petitioner's trial counsel filed a witness list stating that Petitioner intended to have a Head Start representative give foundational testimony to admit a copy of a document Petitioner purportedly signed when he picked up his daughter from Head Start at 11:30 a.m. on the day of the robbery. The prosecution moved to strike this witness because Petitioner never filed a

11

"Notice of Alibi Defense," as required by state law, and Petitioner's witness list was not timely filed. (Mot., ECF No. 10-5.) At a hearing on the motion, Petitioner's trial counsel acknowledged that Petitioner's witness list was filed after the time expired for giving notice of an alibi defense and for amendment of a general witness list without leave of court. (10/29/12 Hr'g Tr. at 4, ECF No. 10-6 at Pg ID 146.) Counsel nevertheless argued that the Head Start representative was not an alibi witness as Petitioner could have been at the scene of the crime even if he picked up his daughter at 11:30 a.m. (*Id.*) Counsel further argued that the prosecutor would suffer no prejudice if the witness was permitted to testify. (*Id.*) The trial court granted the prosecution's motion and struck the witness list. (*Id.* at 9, Pg ID 147.)

Supreme Court precedent "'establish[es], at a minimum, that criminal defendants have the right to the government's assistance in compelling the attendance of favorable witnesses at trial and the right to put before a jury evidence that might influence the determination of guilt.'" *Taylor v. Illinois*, 484 U.S. 400, 407 (1988) (quoting *Pennsylvania v. Ritchie*, 480 U.S. 39, 56 (1987)). "Few rights are more fundamental than that of an accused to present witnesses in his own defense[.]" *Id.* This right derives from the Compulsory Process Clause of the Sixth Amendment to the U.S. Constitution. As such, a defendant's rights under the

Sixth Amendment may be violated by imposing a discovery sanction that entirely excludes the testimony of a material defense witness. *Id.* at 409.

Nevertheless, the *Taylor* Court recognized that the Constitution does not create an absolute bar to a court's preclusion of defense witness testimony "that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Id.* at 410. The Supreme Court further indicated in *Taylor* that "[t]he adversary process could not function effectively without adherence to rules of procedure that govern the orderly presentation of facts and arguments to provide each party with a fair opportunity to assemble and submit evidence to contradict or explain the opponent's case." *Id*. at 411; *see also Michigan v. Lucas*, 500 U.S. 145, 152 (1991) (noting that the *Taylor* court "rejected the defendant's argument that, under the Compulsory Process Clause of the Sixth Amendment, preclusion is never a permissible sanction for a discovery violation"). Thus, a defendant's violation of discovery rules may support the exclusion of even favorable testimony. *Taylor*, 484 U.S. at 412-13.

The *Taylor* Court declined to "draft a comprehensive set of standards to guide the exercise" of a trial court's discretion to sanction a party for failing to comply with discovery rules. *Id*. at 414. Subsequent to *Taylor*, in *United States v. Scheffer*, 523 U.S. 303 (1998), the Supreme Court provided that "the exclusion of evidence in a criminal trial 'abridge[s] an accused's right to present a defense' only

where the exclusion is 'arbitrary or disproportionate to the purpose it is designed to serve.'" *Ferensic v. Birkett*, 501 F.3d 469, 475 (6th Cir. 2007) (quoting *Scheffer*, 523 U.S. at 308) (additional quotation marks, citation, and brackets omitted). The Supreme Court has "'found the exclusion of evidence to be unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused.'" *Id*. at 475-76 (quoting *Scheffer*, 523 U.S. at 308). The Court also "give[s] special consideration to the nature of the exclusion-triggering discovery violation at issue, noting that only egregious violations involving, for example, 'wilful misconduct' on the part of the defendant or his counsel will justify the exclusion of material evidence." *Id*. at 476 (citing *Lucas*, 500 U.S. at 152). "[T]he exclusion of a defendant's evidence should be reserved for only those circumstances where 'a less severe penalty would perpetuate rather than limit the prejudice to the State and the harm to the adversary process.'" *Id*. (quoting *Lucas*, 500 U.S. at 152).

The Michigan Court of Appeals rejected Petitioner's claim regarding the exclusion of the Head Start representative's testimony, reasoning:

> Although "a defendant has a constitutionally guaranteed right to present a defense, which includes the right to call witnesses," [*People v. Yost*, 749 N.W.2d 753, 779 (Mich. Ct. App. 2008)], "this right is not absolute: the accused must still comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Id*. (quotation marks and citation omitted). Here, defendant was merely denied the

14

> opportunity to call a foundation witness for a piece of physical evidence. The trial court did not prevent defendant from presenting a defense. If the sign-in sheet is accurate, then defendant would have known he was at Head Start at 11:30 a.m. and could have communicated that to his attorney, who in turn could have pursued the records much earlier and filed a timely witness list in support of that argument.

*Lewis*, 2014 WL 1616409, at * 3. This decision was neither contrary to, nor an unreasonable application of, clearly established federal law.

Petitioner's trial counsel waited until the eleventh hour—beyond the time allotted under Michigan law and the state's procedural rules—to file a witness list identifying the Head Start representative as a witness. The state's rules regarding the time for filing witness lists and notifying the prosecution of an alibi witness are not complicated. *See Taylor*, 484 U.S. at 415 (indicating that "[t]he simplicity of compliance with the discovery rule is also relevant[]" in deciding whether exclusion is a constitutional sanction). It is inexplicable why Petitioner did not disclose this witness in a timely fashion, as he certainly knew of the sign-out sheet's existence if he in fact signed it when he picked up his daughter at 11:30 a.m. on the date in question. Petitioner's trial counsel at least did not provide any excuse for the late submission.

Furthermore, as Petitioner's counsel acknowledged, the Head Start representative's testimony did not establish an alibi for Petitioner. The security camera record for the store showed two men entering the store twenty minutes

15

after the Head Start sign-out sheet reflects Petitioner's daughter was picked up, and showed the same men returning to commit their crimes another hour later at 12:50 p.m.[2] The testimony also would not have confirmed that Petitioner was the person who picked up his daughter at 11:30 a.m., it only was offered to establish the foundation for the admission of the document.[3] Additionally, the trial court's ruling did not prevent Petitioner from otherwise presenting a defense. For these reasons, the preclusion of this evidence did not cause prejudice to the truth-determining function of the trial process and was not so egregious that it effectively denied Petitioner a fair trial.

For these reasons, the Court concludes Petitioner is not entitled to habeas relief on his second claim.

### C. Petitioner's jury instruction claim

Petitioner alleges that the trial court erred by refusing to instruct the jury on the necessarily included lesser offenses of unarmed robbery and larceny from a person.

---

[2] In his appellate brief, Petitioner acknowledged that multiple Head Start programs are located near enough to the robbery location to enable Petitioner to be at both places at the designated times. (*See* Pet's Br. at 10, ECF No. 10-13 at Pg ID 334.) Petitioner therefore recognized that the evidence did not establish an alibi; however, he argued it would support the argument that he would not likely pick up his daughter and then plan and execute an armed robbery shortly thereafter. (*Id.*)
[3] According to defense counsel, the witness would not be able to testify as to whether he or she saw Petitioner at Head Start at the date and time in question. (10/29/12 Hr'g Tr. at 8-9, ECF No. 10-6 at Pg ID 147.)

"The Supreme Court, however, has never held that the Due Process Clause requires instructing the jury on a lesser included offense in a non-capital case." *McMullan v. Booker*, 761 F.3d 662, 667 (6th Cir. 2014) (citing *Beck v. Alabama*, 447 U.S. 625, 638 n.14 (1980)). "Simply put, 'the Constitution does not require a lesser-included offense instruction in non-capital cases.'" *Id.* (quoting *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001)) (additional citations omitted). This is not a capital case.

Therefore, the state court's rejection of Petitioner's jury instruction claim was not contrary to clearly established federal law. Petitioner is not entitled to habeas relief on this claim.

### D. Petitioner's sentencing guidelines claim

Petitioner's final ground for relief challenges the trial court's scoring under the Michigan sentencing guidelines. Petitioner contends that the trial court improperly scored offense variables (OV) 4 and 14, producing an incorrect guidelines range.

Petitioner's claim concerning the scoring or calculation of the State's sentencing guidelines is not cognizable on federal habeas review as it is a matter of state concern only. *See Marin v. Brewer*, No. 16-2420, 2017 WL 4677506, at *3 (6th Cir. Apr. 28, 2017) (citing *Howard v. White*, 76 F. App'x. 52, 53 (6th Cir. 2003); *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005)); *see also Kissner v. Palmer*,

17

826 F.3d 898, 904 (6th Cir. 2016) (providing that "errors in the application of state sentencing guidelines … cannot independently support habeas relief[.]"). "'[F]ederal habeas corpus relief does not lie for errors of state law.'" *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)).

Petitioner, therefore, is not entitled to habeas relief based on his sentencing claim.

## IV. Conclusion & Certificate of Appealability

For the reasons set forth above, the Court concludes that Petitioner is not entitled to the writ of habeas corpus under § 2254. To the extent Petitioner seeks to appeal this decision, he must first obtain a certificate of appealability ("COA"). *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b).

To obtain a COA, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate

that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.

Petitioner fails to make a substantial showing of the denial of a federal constitutional right. Reasonable jurists would not find this Court's assessment of Plaintiff's claims to be debatable or wrong. The Court, therefore, is declining to issue a COA. The Court further finds that any appeal of its decision would be frivolous. As such, the Court denies Petitioner leave to appeal in forma pauperis. *See* Fed. R. App. P. 24(a).

Accordingly,

**IT IS ORDERED** that the Petition for a Writ of Habeas Corpus is **DENIED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the Court declines to issue a Certificate of Appealability and denies Petitioner leave to appeal in forma pauperis.

s/ Linda V. Parker<br>
LINDA V. PARKER<br>
U.S. DISTRICT JUDGE

Dated: October 21, 2018

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, October 21, 2018, by electronic and/or U.S. First Class mail.

s/ R. Loury<br>
Case Manager